UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-62442-CIV-COHN/SELTZER

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

$80,853.00 IN CASH, UNITED STATES
CURRENCY, SEIZED FROM JOSHUA
OPPENHEIMER'S BLACK DUFFEL BAG,

    Defendant,

JOSHUA OPPENHEIMER,

    Claimant.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff United States of America's Motion to Strike Claim of Joshua Oppenheimer, for Lack of Standing and/or for Partial Summary Judgment [DE 20]. The Court has considered the motion and related filings and is otherwise fully advised in the premises.

**I.    Material Facts**[1]

In August 2011, Claimant Joshua Oppenheimer, a Massachusetts resident, agreed to transport money to South Florida for a man he knew by the street name "Cookie." In exchange, Cookie agreed to pay Claimant $2,000 upon delivery of the money and gave him $300 for travel expenses. Claimant learned through later

---

[1] Claimant's response to Plaintiff's motion does not include the statement of material facts required by Local Rule 56.1(a). Consequently, all material facts recited by Plaintiff and supported by evidence of record are deemed admitted. See S.D. Fla. L.R. 56.1(b).

research that Cookie's real name was Ramon Cruz. Claimant had seen Cruz at a car dealership but did not know his occupation or where he lived.

Cruz packed the money in Claimant's backpack outside his presence. Claimant never saw or touched the money, and he had no idea of its amount. Cruz gave the backpack to Claimant and instructed him to transport it by bus. Further, Cruz told Claimant to call him when he reached South Florida, and Claimant would receive instructions on where to deliver the money.

On August 15, 2011, Claimant arrived in Hollywood, Florida, on a bus that provides service between Miami, Chicago, and New York. Claimant, the only passenger departing the bus, was carrying a black backpack and pulling a small suitcase on wheels. As he exited the bus, Claimant was approached by two members of a Broward County Sheriff's Office drug-interdiction task force. The plain-clothes officers identified themselves as law enforcement and inquired whether anyone had asked Claimant to carry narcotics or large sums of money. Claimant, who began shaking uncontrollably, responded "No, I only have about two hundred [dollars] in my pockets." DE 20-2 at 2, ¶ 7. The officers then asked Claimant if they could search his bags, and he replied, "sure, search whatever you want." Id. at 2, ¶ 8. Claimant's backpack contained large sums of cash bundled together with rubber bands and wrapped inside plastic bags with duct tape. According to declarations submitted by the task-force officers, this method of wrapping currency is a common means of transporting drug proceeds.

One of the officers asked Claimant if the money belonged to him, and he said that it did not, suggesting instead that "someone must have placed that currency inside

my bag, during the trip, without my knowledge." Id. at 2, ¶ 10.  At the officer's request, Claimant signed an ownership disclaimer form confirming that he was not the owner of the money and had no claim for its return.  See DE 1-1 at 1.  Officers used a drug dog to inspect the currency, and the dog alerted positively to the odor of narcotics.

## II.    Procedural History

On November 15, 2011, Plaintiff filed this action for forfeiture *in rem* against the Defendant currency, alleging that it was forfeitable as proceeds of, or funds intended to be used in, illegal drug transactions.  See DE 1; 21 U.S.C. § 881(a)(6).  The currency was later arrested pursuant to a warrant of arrest *in rem*.  See DE 5, 6.  On December 19, 2011, Claimant filed a notice of claim seeking return of the currency.  See DE 7.  Claimant alleged that the money was found in his custody and exclusive control, that he was wrongfully detained and searched, and that no evidence connected the funds with illegal activity.  Plaintiff now moves to strike this claim, or for summary judgment, on the ground that Claimant lacks standing.  See DE 20.  Plaintiff contends that Claimant has no property interest in the seized currency and therefore cannot challenge its forfeiture.

## III.    Discussion

### A.    Standing Requirements

To contest the Government's seizure and forfeiture of property, a claimant first must establish both constitutional standing and statutory standing.  See United States v. $38,000.00 in United States Currency, 816 F.2d 1538, 1543 (11th Cir. 1987). Standing under Article III of the Constitution "is a threshold matter required for a claim to be considered by the federal courts."  Via Mat Int'l S. Am. Ltd. v. United States, 446

3

F.3d 1258, 1262 (11th Cir. 2006). A party claiming seized property "must demonstrate a sufficient interest in the property to give him Article III standing." $38,000.00, 816 F.2d at 1543. While ownership of the property may provide evidence of an injury sufficient to confer standing, "ownership is not required." Via Mat Int'l, 446 F.3d at 1262. "[N]on-owners, such as bailees or those with possessory interests, can also have injuries resulting from the seizure of property that are sufficient to establish standing." Id.; see $38,000.00, 816 F.2d at 1544 ("A claimant need not own the property in order to have standing to contest its forfeiture; a lesser property interest, such as a possessory interest, is sufficient for standing."). Still, "not just any purported injury or interest is sufficient—'straw owners' and persons who might have unknowingly been in possession of property that is seized do not necessarily suffer an injury that is sufficient to demonstrate standing." Via Mat Int'l, 446 F.3d at 1262 n.5.

In addition to showing constitutional standing, "claimants also must satisfy applicable statutory standing requirements." $38,000.00, 816 F.2d at 1544. Like Article III standing, statutory standing is a threshold issue that must be resolved before considering the merits of a claim. See id. In this civil-forfeiture action, the applicable standing requirements are found in the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). See id. at 1544-45 & n.13. Supplemental Rule G(5)(a)(i) provides that "[a] person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending." Among other requirements, that claim must "identify the specific property claimed" and "identify the claimant and state the claimant's interest in the property." Suppl. Rule G(5)(a)(i)(A-B). Also, "[a] claim filed by a person asserting an

4

interest as a bailee must identify the bailor, and if filed on the bailor's behalf must state the authority to do so." Suppl. Rule G(5)(a)(iii). If a claimant does not meet these requirements or otherwise lacks standing, the Government may move to strike the claim. See Suppl. Rule G(8)(c)(i). Such a motion may be presented as one seeking summary judgment on the issue of standing. See Suppl. Rule G(8)(c)(ii)(B).

### B.    Analysis of Claimant's Standing

With respect to Article III standing, it is undisputed that Claimant is not the owner of the Defendant currency. Both orally and writing, Claimant confirmed at the time of seizure that he did not own the money. Further, Claimant admitted in his deposition that the funds belonged to Cruz and that Claimant had no ownership rights in the money. See DE 20-1 at 32, 63, 79.

Instead, Claimant asserts a possessory interest in the seized currency. In his notice of claim, the only mention of Claimant's alleged interest in the currency was that the funds "were in [his] custody and exclusive control." DE 7 at 1, ¶ 2. In his response to Plaintiff's motion, however, Claimant disputes that he was "merely a 'courier'" for the funds, arguing instead that he was a bailee. DE 28 at 2, ¶¶ 5, 10; see Black's Law Dictionary 161 (9th ed. 2009) (defining "bailee" as "[a] person who receives personal property from another, . . . has possession of but not title to the property[, and] is responsible for keeping the property safe until it is returned to the owner"). Similarly, Claimant stated in his deposition that he was "responsible for" the money and was "holding it" for the owner. DE 20-1 at 63, 66. It is clear, then, that Claimant is asserting

5

standing solely as a bailee of the currency.[2]

Based on the facts of this case, the Court questions whether Claimant can establish Article III standing as a bailee. Although Claimant provided the name of his alleged bailor during deposition—a name Claimant learned only though independent research—he could offer few specific facts about that individual. Moreover, the facts that Claimant did disclose showed that he was acting as a courier for Cruz under highly suspicious circumstances and that he knew essentially nothing about the money he was carrying. In similar circumstances, other courts have found that such "unexplained naked possession does not constitute a sufficient possessory interest to confer standing on a claimant." Munoz-Valencia v. United States, 169 F. App'x 150, 152 (3d Cir. 2006) (collecting circuit decisions); cf. Via Mat Int'l, 446 F.3d at 1262 n.5.

But even if Claimant can establish a possessory interest sufficient to confer constitutional standing as a bailee of the currency, he cannot show statutory standing. While Claimant indicated in his deposition that he was holding the funds for Cruz, the notice of claim filed in this action nowhere mentions that Claimant was a bailee, nor does it identify any bailor. See Suppl. Rule G(5)(a)(iii).[3] For this reason, Claimant lacks statutory standing to challenge the forfeiture as a bailee. See United States v. $260,242.00 United States Currency, 919 F.2d 686, 688 (11th Cir. 1990) (per curiam) (holding that district court properly struck civil-forfeiture claim that alleged claimant was

---

[2] Other than the alleged bailment, Claimant has identified no other possessory interest that, if deprived, would create an injury sufficient to confer standing. See Via Mat Int'l, 446 F.3d at 1262-63. Indeed, Claimant acknowledged during his deposition that if the currency were forfeited, he would suffer no financial loss. See DE 20-1 at 79.

[3] Though Claimant filed his notice of claim nearly six months ago, he never sought to amend that claim to identify any alleged bailor.

a bailee but did not identify the bailor); see also United States v. $12,126.00 in United States Currency, 337 F. App'x 818, 820 (11th Cir. 2009) (per curiam) ("We have emphasized that claimants must strictly adhere to the procedural requirements of the Supplemental Rules to achieve statutory standing to contest a forfeiture action."). Because the record shows conclusively that Claimant has not met the statutory-standing requirements for his claim to the Defendant currency, Plaintiff is entitled to summary judgment on that claim. See Fed. R. Civ. P. 56(a).

**IV.   Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Strike Claim of Joshua Oppenheimer, for Lack of Standing and/or for Partial Summary Judgment [DE 20] is hereby **GRANTED**.

2. The calendar call scheduled for June 21, 2012, is hereby **CANCELLED**, and the case is removed from the Court's June 25, 2012, trial calendar.

3. By **June 21, 2012,** the United States shall advise the Court whether any further issues remain to be resolved before the Court enters a final judgment of forfeiture. If appropriate, the United States shall move at that time for the entry of such a judgment.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 7th day of June, 2012.

_James I. Cohn_
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF